## INTERFERENCE WITH REST AND COMFORT BY VIBRATION OF ENGINE.

Common Pleas Court of Hamilton County.

LOUISA V. EMMES v. THE A. NIELEN COMPANY.

Decided, July 27, 1916.

*Injunction—Lies Against Operation of a Factory Engine at Night— When it Interferes With the Rest and Comfort of a Neighboring Householder.*

1. Where it is shown by the evidence that the operation of the engine of the defendant causes a vibration in the premises of the plaintiff, so as to seriously interfere with the use of said premises for the purpose of sleeping in the night season, an injunction will be granted as to the operation of the said engine in the night season.

2. Where the premises of the plaintiff are situated in a neighborhood that is largely surrounded by manufacturing establishments of various kinds, a vibration in her premises caused by the engine of the defendant will not be sufficient to cause the court to enjoin the operation of said engine, where the evidence shows that in so far as said vibration in the day time is concerned it is no greater than the ordinary vibration attendant upon a manufacturing neighborhood.

*Dempsey & Nieberding,* for plaintiff.
*Heilker & Heilker,* contra.

GEOGHEGAN, J.

This is an action brought by the plaintiff against the defendant for an injunction restraining the defendant from operating a certain gas engine so as to cause shaking, vibration and quivering in plaintiff's dwelling-house in such a manner as to make it uncomfortable and disagreeable to live in, and for damages.

Plaintiff alleges that she is the owner of a certain brick dwelling-house at No. 1140 Dayton street in the city of Cincinnati; that she and her family have been since February 23, 1903, using said dwelling-house as a family residence; that in October, 1913, the defendant caused to be erected and installed in its business plant at Bank and Winchell avenues in said city, a gas engine to which is attached various machinery moved by belting and gearing; that since the installation of said engine the defendant has caused same to be run and operated day and night without intermission, except on Saturday nights and Sundays; that in so doing defendant has caused and still causes a violent shaking, quivering and vibration of plaintiff's dwelling-house, making it difficult for plaintiff and her family to sleep, and interfering with the comfortable use and occupancy of the said dwelling-house as a home, and has injured said house by cracking the plastering, racking and weakening the house, etc., to plaintiff's damage.

The defendant answers admitting the occupancy of the dwelling-house by plaintiff as alleged in her petition, and further saying that it, the defendant, has occupied the building at Bank and Winchell streets for a number of years for manufacturing purposes; that the neighborhood is a factory or manufac-

turing neighborhood; that the gas engine complained of has been in use for more than two and a half years, and that since the filing of the action herein it has, on recommendation of plaintiff's expert, built a new and substantial concrete foundation for said engine at considerable cost, and that it has made a number of other changes at considerable cost. Defendant further avers that if plaintiff's house vibrates, such vibrations are due to other causes; that Dayton street in front of plaintiff's property is a much traveled street; that many heavily laden wagons and trucks pass along said street, which cause plaintiff's house to vibrate; that plaintiff's house is very old, built on filled ground and has been subjected to hard use.

With the issues made up as aforesaid, the case came on for trial. The court heard all the evidence and made a personal inspection of the neighborhood, the premises of the plaintiff and the premises of the defendant. At the time of the first visit of the court to the neighborhood, in the presence of the counsel and representatives of both the plaintiff and the defendant, including the experts employed by both parties, a test was made. Instructions were given to have the engine complained of shut down at ten minutes before 4 P. M., which was accordingly done. Immediately the visible evidence of vibration in plaintiff's building ceased. In accordance with further instructions the engine was started again at 4 o'clock, and immediately the vibration started and was continuing when the court left the premises of the plaintiff.

In order to be doubly sure of the fact that the vibrations in plaintiff's building were caused by the operation of defendant's engine, the court made another visit to the neighborhood at a time when the traffic along the various streets had practically ceased and all plants in the neighborhood shut down with the exception of the engine in defendant's factory, and the court again observed that the vibration was continuing in plaintiff's dwelling-house.

From these observations, as well as from the evidence adduced upon the trial, the court is of the opinion that the vibrations in plaintiff's dwelling-house are caused by the operation of defendant's engine, and inasmuch as this now seems to be the only

matter in dispute between the parties, the only question for determination is what relief, if any, the plaintiff is entitled to under all the surrounding circumstances.

The court has read with a great deal of interest the very carefully prepared and instructive briefs of counsel for both plaintiff and defendant, and it would add nothing to the judicial literature on the subject of nuisances of this kind for the court to write an extensive opinion. Both counsel for the plaintiff and defendant have had occasion to examine this subject in all its aspects, the one as counsel in a hotly contested case, the other as a judge of the Superior Court of the City of Cincinnati, and the court feels with this experience of counsel to assist him, that he has been able to have presented to his mind all the law that is peculiarly applicable to the matter in hand. With that in mind, the court feels that it is only necessary to state the conclusions that he has come to in this matter.

The court is of the opinion that in so far as vibrations that are perceptible in plaintiff's house during the daytime are concerned, no injunction should be granted. While it is true that a vibration does exist in the daytime, the court feels that the same does not offer such an actual, substantial and material injury to plaintiff in the use of her dwelling-house that should call for the intervention of a court of equity. While Dayton street is largely a residential street, nevertheless it can not be denied that the entire surrounding neighborhood is given up largely to manufacturing, and of course this manufacturing has with it the noises, smells and vibrations that are ordinarily attendant upon such use of a neighborhood.

So, it would seem in so far as the daytime vibration is concerned, the plaintiff suffers an injury, perhaps, in common with other persons residing in that neighborhood, and, therefore, the injury can not be said to be of such a nature as would require the intervention of the strong arm of equity to prevent it.

However, a different proposition presents itself in so far as the night season is concerned. While it may be true that a person living in a neighborhood that is largely manufacturing may be compelled to submit to the annoyances and inconvenience that is usually attendant upon such a neighborhood, it can not be said

that this same annoyance must be suffered without relief in the night time.

As was said by Judge Dempsey in the case of *Shaw* v. *Queen City Forging Company*, 7 N. P., 254 (Superior Court General Term):

"There is a time for work and a time for rest, and where one seeks to work all the time to the discomfort and disquietude of his neighbors, and to a deprivation of the natural rest to which the neighbor is entitled, there is a material interference with the neighbor's rights for which he is entitled to a remedy. (See *Wood on Nuisance*, Section 617.)"

It is conceded in this case that the engine operates until 10:30 P. M. and that when necessities require it is operated until midnight or 1 A. M. Certainly, it can not be denied that plaintiff in her dwelling-house with her family is entitled to the rest that nature requires of people at the time that seems to have been peculiarly provided by nature for obtaining such rest, and the application of the maxim, that every man should use his own as not to interfere with his neighbor in the neighbor's lawful use of his own property, should be applied here.

Therefore, I am of the opinion that in so far as the prayer of the petition is for an injunction restraining the operation of the defendant's plant, it should be granted, at least for the present. It is always difficult to determine just what hours of the night should be included under the term *night season*. The words are capable of a reasonable construction, which means that the matter should be determined from the court's knowledge of all the surrounding facts and circumstances of the case, having regard both for the comfort and convenience of the plaintiff and the successful operation and management of the defendant's business, and it seems to the court, in view of the nature of the vibrations that are caused herein, and in view of the fact that there is no great noise connected therewith, that the hours between 10 o'clock in the evening and 6 o'clock on the following morning should be determined to be the night season for this particular case.

As to the question of damages, the court has had no particular

advice on the subject and no proof has been offered as to the amount of damages, and therefore, the court can assess none.

The order of the court is that the defendant be restrained from operating his engine between the hours of 10 o'clock at night and 6 o'clock in the morning. This will stand for the present, the court reserving the right to reopen this matter in case of any change in the conditions upon which this opinion has been based.

---

## IRREGULARITY IN OBTAINING JUDGMENT UNDER AN AMENDED PETITION.